IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLINTON WASHINGTON,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 21-4831 |
| **LOUIS DEJOY,** | : | |
| *Defendant.* | : | |

## MEMORANDUM

**Goldberg, J.**                                                                                                    **October 31, 2022**

Plaintiff Clinton Washington brings this *pro se* Complaint against Defendant Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"), seeking monetary relief for his alleged loss of employment, loss of rights to disability compensation, and permanent bodily injury. He sets forth various claims including mail fraud, discriminatory disability records act practices, due process violations, illegal loss of employment, and slander.

Defendant moves to dismiss all claims. For the following reasons, I will grant the Motion and dismiss the Complaint.

**I.    FACTS SET FORTH IN THE COMPLAINT**

The following facts are set forth in the Complaint.[1]

Plaintiff alleges that, on May 10, 1986, he was hired by USPS in the Maintenance Custodial Labor Department. Due to his lower back problems, the position was specifically reserved for the disabled. On January 1, 1987, he received a promotion to Labor Custodian. (Compl. p. 3.) On May

---

[1] Plaintiff's Complaint consists of eleven pages with no paragraph spacing. Although his factual allegations are not entirely clear, I have attempted to parse them out and have accepted them as true, as required by Federal Rule of Civil Procedure 12(b)(6). See Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

24, 1991, while performing the duties of his employment, Plaintiff injured his back and filed a claim with the Office of Workers' Compensation Programs ("OWCP"). Thereafter, on September 4, 1991, while on limited duty, he was in a minor car accident. He recovered from both accidents and was able to return to his regular duties as a Labor Custodian by the end of 1991. (Id.)

On July 23, 1992, while performing his regular work duties, Plaintiff was injured in an elevator accident. He again filed a claim with OWCP. Although he was never able to return to his regular duties as a Labor Custodian, he returned to work in limited duty capacity in May 1993 and was assigned to light office work. Thereafter, on September 22, 1993, his immediate supervisor changed the job assignment outside the restricted limited duty assignment and placed Plaintiff onto the work room floor. Plaintiff then sustained a third injury to his back for which he filed another claim with OWCP. He asserts that during the eight-month recovery period from the September 22, 1993 accident, he was placed into the OWCP Vocational Rehabilitation Program. On May 6, 1994, he returned to work in a limited duty capacity with the agency. (Id. at pp. 3–4.)

In the interim, Plaintiff proceeded with his six OWCP workers' compensation claims and, during this time, he allegedly experienced a series of missteps. In particular, Plaintiff asserts that both OWCP and USPS committed various forms of fraud, including losing/stealing his federal records, cyberintrusion, privacy/due process violations, identity theft, and discriminatory disability records violations and practices. More specifically, Plaintiff contends that he was improperly deprived of disability compensation, that OWCP failed to adequately adjudicate his benefits, that OWCP and USPS lost factual medical evidence for his claims and failed to mail his documentation, that his OWCP records were stolen, and that his privacy rights were violated. (Id. at pp. 4–7.)

On September 8, 2000, Plaintiff was terminated from his position for failure to meet attendance requirements and follow instructions, and for being coded AWOL. Plaintiff appealed this termination with the Merit Systems Protection Board ("MSPB"). On April 10, 2001, the MSPB issued a "Settlement Agreement and Release of All Claims" wherein Plaintiff was rehired. On June 28, 2001, however,

2

Plaintiff was issued a "Notice of Separation" due to his failure to provide the necessary document certifying his fitness to perform the duties associated with his position. Plaintiff again appealed his termination. On April 4, 2003, the administrative law judge affirmed Plaintiff's removal. Plaintiff's Petition for Review was denied. (Id., Ex. 1; ECF No. 1-1 at pp. 44–45, 67, 79.)

On August 7, 2020, Plaintiff filed an EEOC complaint against USPS alleging denial of benefits, disability discrimination, and retaliation. Specifically, Plaintiff alleged that he applied for employment as a labor custodian at USPS on March 22, 2020, but the agency denied his application in retaliation for his prior EEOC activity. On June 9, 2021, the EEOC granted USPS's motion to dismiss finding no substantiation for his claims. Thereafter, on June 23, 2021, the National Equal Employment Opportunity Investigative Services Office issued a "Notice of Final Action," instructing Plaintiff that if he was dissatisfied with USPS's final decision, he could "file a civil action in the appropriate U.S. District Court within 90 calendar days of [his] receipt of the Postal Service's final decision." Plaintiff received the "Notice of Final Action" on June 28, 2021. (Def.'s Mot., Ex. 5.)[2]

On September 22, 2021, Plaintiff filed a complaint in the Philadelphia County Court of Common Pleas. Defendant removed the action to federal court on November 2, 2021, and filed a Motion to Dismiss.

---

[2] It is well settled law in the Third Circuit that the Court may properly consider attached EEO documents when deciding a motion to dismiss, especially when those documents are, as here, integral to the Complaint. See Smith v. Pallman, 420 F. App'x 208, 212 (3d Cir. 2011) (citing Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.")). Courts have routinely allowed a defendant to attach documents in underlying EEOC proceedings in support of a Rule 12(b)(6) motion. See Smith, 420 F. App'x at 213 (holding that the district court properly considered the EEO documents that were attached to the defendant's Rule 12(b)(6) motion because exhaustion of administrative remedies is "integral" to the case) (citing cases); Saba v. Middlesex Cty. Bd. of Soc. Servs., No. 16-cv-4712, 2017 WL 2829618, at *5 (D.N.J. June 30, 2017) (considering the documents from the EEOC claim, which were attached to the defendant's Rule 12(b)(6) motion).

II.    **STANDARDS OF REVIEW**

    A.  <u>**Rule 12(b)(1)**</u>

Pursuant to Federal Rule of Civil Procedure 12 (b)(1), a party may seek dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion pursuant to Rule 12(b)(1) challenges the power of the court to hear the case. <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 302 (3d Cir. 2006). A challenge to jurisdiction may be either facial or factual. <u>Gould Electrs. Inc. v. United States</u>, 220 F.3d 169, 176 (3d Cir. 2000) (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)). In a facial challenge, the court will limit evaluation to only the allegations in the pleadings and assume the truthfulness of the complaint. <u>Mortensen</u>, 549 F.2d at 891. A factual attack, however, offers no such deference to the plaintiff's allegations and the court may weigh evidence outside of the facts in the pleadings to determine whether jurisdiction exists. <u>Id.</u>

    B.  <u>**Rule 12(b)(6)**</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); <u>see also</u> <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotations omitted). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and only a complaint that states a plausible claim for relief survives a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. <u>Id.</u> at 679.

4

The United States Court of Appeals for the Third Circuit has detailed a three-step process to determine whether a complaint meets the pleadings standard. Bistrian v. Levi, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. Id. at 365. Next, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." Id. Finally, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 679). The last step is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679).

A *pro se* complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." U.S. ex rel. Walker v. Fayette Cty., Pa., 599 F.2d 573, 575 (3d Cir. 1979), (citing Haines v. Kerner, 404 U.S. 519, 521 (1972)). The court must construe the facts stated in the complaint liberally in favor of the plaintiff. Haines, 404 U.S. at 520. "Yet there are limits to our procedural flexibility. For example, *pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not do." Id.

III. DISCUSSION

    A. **Loss of Employment Claims**

Plaintiff first alleges that, on September 8, 2000, he was terminated from his position for failure to meet attendance requirements, failure to follow instructions, and for being coded AWOL. Although he was rehired following an appeal of his termination with the Merit Systems Protection Board ("MSPB"), Plaintiff was subsequently issued a "Notice of Separation" due to his failure to comply with the terms of the settlement. Plaintiff raises his loss of employment claim here.

Defendant now seeks dismissal of any claims challenging Plaintiff's loss of employment, contending that claims relating both to Plaintiff's MSPB appeal and Plaintiff's EEOC complaint are time barred.

1. <u>Plaintiff's Claim for Review of His MSPB Claim</u>

Under 5 U.S.C. § 7703, "[a]ny employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision." <u>Id.</u> at § 7703(a)(1). Such judicial review has both time and jurisdictional limits. Specifically, "a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit." <u>Id.</u> at § 7703(b)(1)(A). Moreover, "any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board." <u>Id.</u> "Statutory time limits for appeals are jurisdictional and cannot be equitably tolled or waived." <u>Jones v. Dept. of Health & Human Servs.</u>, 702 F. App'x 988, 989 (Fed. Cir. 2017). A plaintiff bears the burden of establishing subject matter jurisdiction. <u>See</u> <u>Gould Elec., Inc. v. U.S.</u>, 220 F.3d 169, 178 (3d Cir. 2000).

Here, aside from the fact that Plaintiff did not file this claim in the Federal Circuit, as required by statute, his claim is untimely. The MSPB, through an administrative law judge, issued its initial decision affirming Plaintiff's removal from employment on April 4, 2003. Although neither the Complaint nor the attached exhibits indicate precisely when Plaintiff's Petition for Review from this decision was denied[3]—which would render the MSPB's decision final—Plaintiff has not met his burden of showing that the denial occurred less than sixty days from the filing of his September 22, 2021 Complaint. Indeed, logic suggests otherwise. For Plaintiff's Complaint to be timely, the MSPB's final decision would have had to have been issued no earlier than July 22, 2021—more than eighteen years after he filed his Petition for Review. As I find that Plaintiff has failed to establish that I have jurisdiction over this claim, I will dismiss it with prejudice.

---

[3] Under 5 C.F.R. § 1201.114(e), Plaintiff's petition for review had to have been filed within thirty-five days after the date of the issuance of the initial decision, which would have been May 9, 2003.

2. Title VII Claims

Under 42 U.S.C. § 2000e-5(f)(1), a plaintiff has ninety days from receipt of an EEOC right-to-sue letter in which to bring a civil action. Id. The Third Circuit has "strictly construed the 90-day period and held that, in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 470 (3d Cir. 2001). The statute goes on to provide that, "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter." 42 U.S.C. § 2000e-5(f)(3).

"Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction." Yellow Freight Sys., Inc. v. Donnelly, 494 U.S. 820, 823 (1990). However, where, as here, the plaintiff is a federal sector employee suing a federal employer, regulations promulgated pursuant to Title VII require that the plaintiff file in federal court. See 29 C.F.R. § 1614.407. Suit is authorized only in "an appropriate United States District Court." Id. Accordingly, failure to bring suit in federal court within the ninety-day time limit acts as a time bar.

Here, Plaintiff's claims are untimely. Plaintiff received the EEOC's "Notice of Final Action" on his EEOC complaint on June 28, 2021. Rather than pursue an action in federal court, Plaintiff filed a state court complaint eighty-six days later. On November 2, 2021—127 days after receipt of the right-to-sue letter—Defendant removed that action to federal court. Accordingly, his federal court action is untimely.

No basis exists on which to equitably toll this statute of limitations. Under the doctrine of equitable tolling, plaintiffs may sue after the statutory time period for filing a complaint has expired if they have been prevented from filing in a timely manner due to sufficiently inequitable circumstances. Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 240 (3d Cir. 1999). Although the Third Circuit has noted that this "extraordinary" remedy should be extended only "sparingly," Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005), it has expressed a willingness to invoke

equitable tolling in a number of circumstances, including when the defendant has actively misled the plaintiff, when the plaintiff "in some extraordinary way" was prevented from asserting her rights; or when the plaintiff timely asserted her rights in the wrong forum. Seitzinger, 165 F.3d at 240 (citing United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)). In order to be eligible for equitable tolling, however, a plaintiff must "exercise 'reasonable diligence in investigating and bringing [his or her] claims.'" Lyons v. Emerick, 187 F. App'x 219, 221 (3d Cir. 2006) (denying equitable tolling to *pro se* prisoner plaintiff who missed deadline for filing suit while he was waiting on prison officials to respond to his request for his account statement) (quoting New Castle Cnty. v. Halliburton NUS Corp., 111 F.3d 1116, 1126 (3d Cir. 1997)). "[I]gnorance, inexperience and pro se status" do not justify the use of equitable tolling. Huertas v. City of Philadelphia, 188 F. App'x 136, 138 (3d Cir. 2006).

Here, the EEOC's Notice of Final Action specifically instructed Plaintiff that "if you are dissatisfied with the Postal Service's final decision in this case, ***you may file a civil action in an appropriate U.S. District Court*** within 90 calendar days of your receipt of the Postal Service's final decision . . ." (Def.'s Ex. 4 (emphasis added).) Despite this unequivocal directive, Plaintiff waited until the eleventh hour and then initiated suit in the wrong forum, failing to heed the notice and leaving himself no time to correct any potential error. Given that equitable tolling is applied sparingly, and in light of Plaintiff's failure to establish reasonable diligence, I find that Plaintiff's Title VII claims are time barred.

### B. Plaintiff's "Loss of Rights to Disability Compensation" Claims

As noted above, Plaintiff alleges that he filed multiple claims with the Office of Workers' Compensation Programs ("OWCP") between 1992–1993 and, on each occasion, was denied disability compensation. His Complaint brings claims relating to this process, including: (1) a request for judicial review of his OWCP proceeding; (2) infringement of his privacy rights; (3) a violation of his due process rights; (4) mail fraud; (5) cyber intrusion; and (6) slander.

Defendant seeks dismissal of all of these claims.

1. Judicial Review of OWCP Proceeding

Plaintiff first contends that he was improperly denied disability compensation.

The Federal Employees' Compensation Act ("FECA") "provides an exclusive and comprehensive compensation scheme to federal employees for injuries that are 'sustained while in the performance of [their] duty.'" Horton v. United States, 144 F. App'x 931, 932 (3d Cir. 2005) (quoting 5 U.S.C. § 8102(a)). "FECA represents the quid pro quo 'commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without the need for litigation, but in return they lose the right to sue the Government.'" Spade v. U.S., 531 F. Supp. 3d 901, 904 (M.D. Pa. 2021) (quotations omitted). "To this end, FECA is the exclusive remedy for injuries or death suffered by a federal employee while acting in the scope of employment" and federal courts have no subject matter jurisdiction to entertain the action. Id. As such, any person otherwise entitled to recover damages may not seek liability in a direct judicial proceeding or civil action but rather must rely on administrative remedies under 5 U.S.C. § 8116. Id.

Moreover, the action of the Secretary of Labor in allowing or denying a payment is "final and conclusive for all purposes and with respect to all questions of law and fact; and . . . not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). In other words, the Secretary of Labor has full discretion to determine whether particular injuries are covered by FECA, and such decisions are absolutely immune from judicial review regardless of whether compensation is actually awarded. Spade, 531 F. Supp. 3d at 904.

Because this Court has no subject matter jurisdiction over Plaintiff's request for review of OWCP's decisions and his denial of disability benefits, this claim must be dismissed.

2. Privacy Act Claim

9

Plaintiff also brings a claim under the Privacy Act related to his OWCP proceedings. He alleges that OWCP, the Employment Compensation Appeals Board, the U.S. Postal Service, and the Department of Labor mishandled his OWCP records and violated his privacy rights in violation of the Privacy Act.[4]

An action to enforce rights under the Privacy Act must be brought "within two years from the date on which the cause of action arises." 5 U.S.C. § 552a(g)(5). "A cause of action arises under the Privacy Act when the individual knows or has reason to know of the alleged error in the individual's record and the individual is harmed by the alleged error." Green v. Westphal, 94 F. App'x 902, 904 (3d Cir. 2004) (citation omitted). The statute of limitations is a jurisdictional prerequisite to filing suit under the Privacy Act. Weber v. Henderson, 33 F. App'x 610, 611 (3d Cir. 2002).

Plaintiff's Complaint alleges that two letters violated his right to privacy: (a) a December 18, 2018 OWCP letter, and (b) an August 19, 2019 OWCP letter. (Compl. p. 1–2, 7.) Accordingly, Plaintiff knew or had reason to know of the alleged error by or no later than August 19, 2019. Plaintiff, however, did not file his Complaint until September 22, 2021, over a month after the expiration of the limitations period. As the statute of limitations is jurisdictional, I must dismiss this claim.

      3.     Due Process Claim

Although the contours of Plaintiff's due process claim are not entirely clear, he appears to allege that Defendant violated his due process rights during the OWCP process when the Postal Service and the Department of Labor lost the factual medical evidence for his disability claim.

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1972), the United States Supreme Court provided a basis for constitutional claims against federal actors in limited contexts. Id. at 391–97. However, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). For that reason,

---

[4]    Plaintiff also sets forth a claim for "cyber intrusion" without specifying the precise basis for this claim. I interpret this claim to rest on the same grounds as his Privacy Act claim and thus consider them together.

without such a waiver, "[a] Bivens action is not available against the United States or one of its agencies." Dambach v. United States, 211 F. App'x 105, 107 (3d Cir. 2006).  Accordingly, to the extent Plaintiff brings a claim against Defendant in his official capacity[5] as Postmaster General, there is no legal basis for a Bivens claim.

To the extent Plaintiff sues Defendant in his individual capacity, his due process claim also fails. "When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an 'affirmative part' in the complained-of misconduct." Rogers v. U.S., 696 F. Supp. 2d 472, 488 (W.D. Pa. 2010) (citing Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  In other words, "supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were 'the moving force' behind the harm suffered by the plaintiff." Fennell v. Rodgers, 762 F. Supp. 2d 727, 733 (D. Del. 2011), aff'd, 436 F. App'x 53 (3d Cir. 2011).

Here, the Complaint is devoid of any allegations describing either any express direction by Defendant DeJoy or any type of policy put into place by DeJoy which was the "moving force" behind any of Plaintiff's injuries.  Absent such factual allegations, I will dismiss this claim.

        4.      Mail Fraud and Slander

Plaintiff contends that, in the context of his OWCP proceedings, he was the target of mail fraud and slander.  Specifically, he posits that his disability/medical records have been compromised or lost through the postal service, thus resulting in mail fraud.  (Compl. p. 4.)  Plaintiff does not set forth any basis for his slander claim.

These claims must be dismissed for several reasons.

---

[5]    Official-capacity suits are simply another way of pleading an action against an entity of which an officer is an agent. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

First, Defendant is immune from suit. As an agency of the United States, the United States Postal Service is part of the United States government and, thus, maintains the same sovereign immunity. U.S. Postal Serv. v. Flamingo Indus., 540 U.S. 736, 744 (2004). A court lacks subject matter jurisdiction over an action against a federal agency unless the plaintiff meets his/her burden of proving that sovereign immunity has been clearly, expressly, and unambiguously been waived. See Dickson v. U.S. Postal Serv., No. 10-cv-49, 2010 WL 4614561, at *2–3 (W.D. Pa. Nov. 5, 2010). While the Postal Reorganization Act creates such a limited waiver of sovereign immunity with respect to suits against USPS, 39 U.S.C. § 401(1) & Loeffler v. Frank, 486 U.S. 549, 555–56 (1988), tort actions against USPS are also subject to the provisions of the Federal Tort Claims Act. 39 U.S.C. § 409(c). The Federal Tort Claims Act preserves sovereign immunity against claims—like those alleged here—"arising out of the loss, miscarriage, or negligent transmission of letters or postal matter" and claims for slander. 28 U.S.C. § 2680(b) & (h).

Second, Plaintiff has failed to state a cause of action for either of these claims. The federal Mail Fraud statute, 18 U.S.C. § 1341, is a criminal statute. It does not create a private right of action under which Plaintiff can sue. See Jones v. TD Bank, 468 F. App'x 93, 94 (3d Cir. 2012).

As to slander, Pennsylvania law requires the Plaintiff to show: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a). Plaintiff has not even identified a defamatory communication let alone allege facts to satisfy the remaining elements of this claim.

Accordingly, I will grant Defendant's Motion to Dismiss these claims.

### C. Plaintiff's Permanent Bodily Injury Claim

Plaintiff's last claim alleges that on three occasions, while on duty with the U.S. Postal Service, he was injured. (See Compl. p. 3.) Accordingly, he now seeks to recover for his permanent bodily injury.

As set forth above, however, where a federal employee is injured in the scope of his employment, the Federal Employees' Compensation Act provides the exclusive remedy. 5 U.S.C. § 8116(c). The employee may not seek judicial relief. Id. As such, I will dismiss this claim.[6]

## IV. CONCLUSION

Taking the Complaint's factual allegations as true and in the light most favorable to Plaintiff, I find that Plaintiff has failed to state a cognizable claim for relief against Defendant. I remain cognizant that a court must allow a *pro se* plaintiff to leave to amend his or her complaint unless it would be inequitable or futile to do so. Phillips v. Cnty of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008); Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Having carefully reviewed Plaintiff's thoroughly-detailed Complaint and his attached exhibits, however, I find that amendment of his claims would be futile. The dismissal of the Complaint does not rest on an absence of adequately-pled facts. Rather, Plaintiff's claims are being dismissed because (a) they are time barred, (b) there is no judicial remedy, and thus no subject-matter jurisdiction, for the cause of action, (c) no legal basis for the alleged cause of action exists, or (d) Defendant is immune from the alleged cause of action. Plaintiff cannot cure these defects through an amended complaint. Accordingly, I will dismiss these claims with prejudice.

An appropriate Order follows.

---

[6] Defendant also presses that, to the extent Plaintiff alleges some bodily injury outside the scope of his postal employment, the exclusive remedy for that injury would be the Federal Tort Claims Act, which requires that a plaintiff exhaust administrative remedies. Plaintiff's Complaint, however, specifically alleges that that each injury occurred in the scope of his employment with the Postal Service. Therefore, I need not address this argument.